**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| JUAN RAMON MOLINA-GARCIA,<br><br>                    Petitioner,<br><br>        v.<br><br>WARDEN, ADELANTO ICE PROCESSING CENTER, *et al.*,<br><br>                    Respondents. | Case No. 5:26-cv-02540-AYP<br><br>**ORDER GRANTING PETITION AND ISSUING A WRIT FOR HABEAS CORPUS** |

## I.    SUMMARY

Petitioner, Juan Ramon Molina-Garcia, is a native and citizen of the Honduras who is currently in the physical custody of Respondents at the Adelanto ICE Processing Center, in Adelanto, California since May 7, 2026. (Dkt. No. 1.) Petitioner entered the United States on July 15, 2003. *Id.* at 6.

He was detained upon entry and released by ICE pending removal proceedings.

On May 12, 2026, Petitioner, filed this Writ of Habeas Corpus under 28 U.S.C § 2241, seeking an order requiring Respondents to release him from immigration detention and enjoining respondents from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community. (Dkt. No. 1.)

Having considered the parties' submissions, the balance of the record, and the governing law, the Court GRANTS the Petition and ORDERS Petitioner's immediate release.

## II.   FACTUAL BACKGROUND

Petitioner is citizen of Honduras. (Dkt. No. 1 at 10.) He entered the United States on July 15, 2003, and was apprehended by Immigration and Customs Enforcement ("ICE") upon entry. *Id*. After being detained and determined to not be a flight risk or a danger to the community, he was released by ICE on his own recognizance ("OREC") pending removal proceedings. *Id*. at 14. He was issued a Notice to Appear ("NTA") on July 16, 2003. *Id*. at 24. According to the NTA, he was scheduled for a hearing on August 12, 2003. *Id*. He appeared on that date and was told by the Department of Homeland Security ("DHS") that it had not filed paperwork yet to begin his case, and that he would be notified by mail of his next hearing date and time. *Id*. at 10. Three years later, in 2006, a hearing was held but Petitioner alleges he was not notified of the hearing. *Id*. He was subsequently ordered removed *in-absentia*. *Id*. He filed a motion to reopen his order claiming lack of notice which was granted by the Immigration Judge ("IJ") in

2025. *Id*. He has since appeared at his required hearings, having received notice. Petitioner includes a copy of his Automated Case Information EOIR from May 12, 2026, stating that his next individual hearing before an IJ is scheduled for October 21, 2027. *Id*. at 11, 29. However, as of July 1, 2026, Petitioner's Automated Case Information EOIR states that his upcoming Master hearing is scheduled for July 15, 2026, at 8:00 am.[1]

In his time in the United States, Petitioner has held a stable job, had three (3) U.S. Citizen children, applied for asylum, appeared for hearings, and was scheduled for a biometrics appointment for his work authorization. *Id*. He initially appeared at his first biometric appointment in March 2026 and was rescheduled for May 7, 2026. *Id*. At his biometrics appointment in May, he was asked if his name was "Luis" and then showed a photo of a different person. *Id*. He replied in the negative and was detained at the appointment. *Id*. He was not provided with an opportunity to rebut this supposition. *Id* at 12.

On May 12, 2026, Petitioner, through counsel, filed this Writ of Habeas Corpus under 28 U.S.C § 2241, seeking an order requiring Respondents to release him from immigration detention and enjoining respondents from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community. Petitioner argues Respondents detained him without notice

---

[1] The Court "may take judicial notice on its own" and "at any stage of the proceeding." Fed. R. Evid. 201. This Court may take judicial notice of "court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). *See U.S. ex rel. Robinson Rancheria Citizens Council v. Bornea, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (finding courts "may take judicial notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"). Accordingly, the Court takes judicial notice of the information on Petitioner's EOIR Automated Case Information page because it may take judicial notice of information posted on official government websites.

3

and a hearing prior to re-detention thereby violating his due process rights and the Administrative Procedures Act ("APA"). (Dkt. No. 1.)

In their Answer, Respondents argue that Petitioner is lawfully detained under 8 U.S.C. § 1226(a), 8 U.S.C. § 1226(e) forecloses judicial review of Respondent's decision to re-detain Petitioner, and even if judicial review is lawful, the proper remedy is a bond hearing not immediate release. (Dkt. No. 7.) Respondents respond to Petitioner's due process claim by arguing that a prompt post-deprivation hearing cures any pre-deprivation due process deficiencies. *Id.*

Having reviewed the parties' arguments and the relevant legal authority, the Court finds that Petitioner has demonstrated that the Government violated his right to due process by re-detaining him without notice and an opportunity to be heard. For the reasons set forth below, the Court therefore **GRANTS** the Petition and issues a writ of habeas corpus requiring Petitioner's immediate release and preventing his re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to detain him.

### III.   PROCEDURAL HISTORY

Petitioner filed the instant habeas petition on May 12, 2026. (Dkt. No. 1.) On May 13, 2026, Petitioner consented to proceed before Magistrate Judge for all proceedings in this case. (Dkt. No. 3.) The Court, also on May 13, 2026, entered the Notice of General Order 26-05 and Briefing Schedule, directing Respondents to show cause why the writ of habeas corpus should not be granted and thereby adopting the standard procedures and briefing schedule under the General Order. (Dkt. No. 5.) Respondents filed their Answer on May 20, 2026. (Dkt. No. 7.) Petitioner filed his Reply on May 22, 2026. (Dkt No. 8.) Thus, the matter is fully briefed.

## IV.   DISCUSSION

The Court now turns to the merits of Petitioners' claims. Petitioner and Respondents agree that Petitioner has been detained pursuant to 8 U.S.C. § 1226(a).

### A. Petitioner's Detention Violates Due Process.

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id.* at 693–94. Freedom from physical restraint lies at the core of this protection. *See id.* at 690–91.

Petitioner has been in the United States since 2003. After Petitioner's entry, when ICE released Petitioner from custody on an OREC after determining that he was not a danger nor a flight risk, it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Agency precedent likewise recognizes that a prior release should not be revoked absent materially changed circumstances. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018).

A growing body of decisions in this District and across the Ninth Circuit have found that immigration authorities violated or likely violated due

process by re-detaining noncitizens who had been released shortly after their entry to the United States without notice or an opportunity to be heard. *See Cruz v. Lyons,* No. 5:25-CV-02879-MCS-MBK, 2025 WL 4051129, at *1 (C.D. Cal. Nov. 6, 2025) (granting temporary restraining ordering releasing noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services); *see also Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in); *M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen who had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in).

In analyzing a procedural due process claim, the Court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test articulated in *Mathews v. Eldridge. Id*. at 1179–80. The *Mathews* framework considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Mathews* is not a bright-line test but rather a flexible test depending on the different circumstances. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *see also Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 589 (9th Cir. 1998). Here, the *Mathews* factors tip in favor of Petitioner.

6

### 1. *Petitioner Possesses a Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). After an initial release from custody on conditions, even a person paroled following a conviction for a criminal offense for which they may lawfully have remained incarcerated has a protected liberty interest in that conditional release. *Morrissey* at 408 U.S. at 482. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases). Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop...ties" in this country, "[her] constitutional status changes accordingly," and she "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher,* 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put

another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Here, after detaining Petitioner in July 2003, ICE released him on his own recognizance. (Dkt. No. 1 at 10, 14.) Until he was re-detained May 7, 2026, Petitioner had spent nearly all of his twenty-three (23) years in the United States released on an OREC. *Id.* Petitioner is entitled to at least those protections described above with respect to his protected liberty interest in remaining out of immigration custody. The Court concludes that Petitioner's original release and time out of custody gave rise to a constitutionally protective liberty interest. Because the Court concludes that Petitioner has a protected liberty interest in his release, the Court must next determine what process is due before the Government may terminate Petitioner's liberty.

2. ***The Mathews Factors Demonstrate Petitioner is Entitled to Release***

Respondents argue that the "Section 1226(a) offers layered and substantial protection, which alone satisfies Due Process" citing to *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1193-94 (9th Cir. 2022). However, in *Rodriguez Diaz v. Garland*, which concerned a noncitizen detained pursuant to 8 U.S.C. § 1226(a) and whether "continued detention was unconstitutional because under the Due Process Clause of the Fifth Amendment, he is entitled to a *second bond hearing* at which the government bears the burden of proof by clear and convincing evidence," the panel majority noted that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," and found "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1193, 1206 (emphasis added).

Similarly, the dissent "agree[d] that the test developed in *Mathews v. Eldridge*, is the appropriate legal framework to determine whether there was a due process violation." *Rodriguez Diaz*, 53 F.4th at 1219 (Wardlaw, J., dissenting). Accordingly, the Court finds that applying the *Mathews* framework is appropriate.

### a) Private Interest

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining her life out of custody. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). The Ninth Circuit has recognized that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). While Petitioner has remained subject to an OREC, which is a form of conditional parole, following his release in July of 2003, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable— has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioners' release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey*, 408 U.S. at 482. This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting

9

*Morrissey*, 408 U.S. at 482).

Petitioner has resided in the United States for about twenty-three (23) years before his re-detention. (Dkt. No. 1 at 10.) There is no question that a person can develop meaningful ties over such a long period of time. Following his release from immigration custody on an OREC, Petitioner has lived in the United States, secured stable work, had three U.S. Citizen children (ages 2-20), and filed for asylum. *See id*. Petitioner's interest is significant. While individuals apprehended shortly after entry in the United States may have "a lesser liberty interest" "at the margin" than other noncitizens who have resided in the United States for decades, "the same important interest is at stake—freedom from prolonged detention." *Diouf v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *overruled on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022).

Consistent with this conclusion, multiple courts, including the undersigned Judge, have found that noncitizens developed protectable liberty interests in their release from immigration custody for periods far less than at issue here. *See, e.g.*, *Aperyan v. Semaia*, No. 5:26-CV-00699, 2026 WL 874734, at *6 (C.D. Cal. Mar. 27, 2026) (finding petitioner had resided in the United States for approximately a year and half before her recent re-detention amounted to a liberty interest); *Clene C. D. v. Robbins*, No. 1:25-CV-01463-KES-SKO, 2025 WL 3492118, at *5 (E.D. Cal. Dec. 4, 2025) (finding a petitioner had a constitutionally protected liberty interest in "eleven months she spent at liberty" following release under § 1226(a)); *Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to petitioner released for "over two years" under Section 1226(a)); *Pinchi*, 792 F. Supp. 3d at 1034 (same, for petitioner released "over two years" under Section 1226(a)); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d

1316, 1321–22 (W.D. Wash. 2025) (same, petitioner released for approximately 21 months under Section 1226(a)).

The Court therefore concludes that the Due Process Clause protects Petitioner's substantial liberty interest in maintaining his freedom from confinement.

### b) Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive— or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention hearing." *Cruz*, 2025 WL 4051129, at *4. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S. at 699. But Petitioner has not been afforded any process to determine whether her detention in fact advances either purpose.

The Respondents argue that the Court "cannot simply count [the] months of detention and leave it at that" but "must also consider the process [petitioner] received during this time" and "the further process that was available to him . . . ." (Dkt. No. 7 at 6 (citing *Rodriguez Diaz*, 53 F.4th at 1208).) The Court has considered the process available to Petitioner. As the Supreme Court has explained, "the baseline requirement is a 'hearing *before* the State deprives a person of liberty,' not after." *Rodriguez-Flores v. Semaia*, No. CV 25-6900 JGB (JCX), 2025 WL 2684181, at *4 (C.D. Cal. Aug. 14, 2025) (emphasis added) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990));

11

*see, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (finding "the root requirement" of the Due Process Clause is that an individual is given "an opportunity for a hearing *before* he is deprived of any significant property interest." (emphasis in original)). Petitioner did not receive a hearing before his re-detention, nor did he receive one after. Because Petitioner has developed a protectable liberty interest, process is due *prior* to deprivation of liberty, not after.

Furthermore, the record suggests that Petitioner is not a flight risk or danger. Petitioner's initial release from custody "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner was released on conditional parole. 8 C.F.R. § 212.5 allows for release on Parole "only on a case-by-case basis for "urgent humanitarian reasons" or "significant public benefit," provided the aliens present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5. "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Since his release, Petitioner has not given any reason to think that the Government's initial determination was in error. He has no criminal history, is not a flight risk, and has established ties to his community. (Dkt. No. 1.) The only incident on Petitioner's record, a missed hearing resulting in an *in-absentia* order, was remedied when his motion to reopen was granted by an IJ. (Dkt. No. 1 at 10.) Furthermore, his redetention seems to have been prompted by a case of mistaken identity. Petitioner, Juan Ramon Molina-Garcia, was asked at his biometrics appointment if he was a specific person

named "Luis" and shown a picture of a different person. *Id.* at 11. He responded in the negative and was detained. He did not receive a hearing or opportunity to contest this detainment.

Based on this record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention.

### c) Government Interest

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously" released noncitizens like Petitioners "without a pre-detention hearing." *Cruz*, 2025 WL 4051129, at *4 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews,* 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in his unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Government's re-detention

13

of Petitioner without adequate pre-deprivation process violated due process.

### B. Petitioners Remaining Claims

Because the Court concludes that Petitioner's release is authorized under Due process grounds, it declines to address his alternative argument under the APA.

### V.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner, Juan Ramon Molina-Garcia's (A #: 096-180-729) immediate release, subject to conditions of supervision that existed prior to his detention on May 7, 2026, along with the return of his personal belongings, including all of his identification, work permits, and other documentation, and preventing his re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government will bear the burden to prove by clear and convincing evidence that Petitioner is a danger to the community or a flight risk before Petitioner may be re-detained; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody.

Additionally, the Petitioner and the Court shall be provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

Dated: July 10, 2026

_____
HON. ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

14